**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CRISTEN GARDNER,** | **Civil Action No. _____** |
| Plaintiff, | |
| **v.** | **CLASS ACTION COMPLAINT** |
| **SENSIO INC.,** | |
| Defendant. | **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff Cristen Gardner, by and through her attorneys, hereby brings this action individually and on behalf of all others similarly situated against Defendant Sensio Inc. (hereinafter at times "Sensio" or "Defendant"). Plaintiff alleges the following based upon personal knowledge as to her own acts and based upon the investigation conducted by counsel as to all other allegations:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action complaint against Sensio for manufacturing, marketing, and selling pressure cookers with a dangerously defective lid-locking assembly.

2.      Sensio's pressure cooker's dangerously defective lid-locking assembly allows a pressure cooker's lid to open while its contents are still under pressure, causing its super-heated contents to erupt from the cooker (in violation of UL Standard for Safety for Pressure Cookers, UL 136) and to scald consumers with second- and third-degree burns ("the Defect").

3.      Plaintiff's son (Ross A. Gardner) and his girlfriend (Stephanie Reader) (collectively the "Injured Victims") were injured by Plaintiff's Sensio pressure cooker due to this same Defect.

4.     Plaintiff brings this class action complaint against Sensio for selling defective pressure cooker products, including:

      a.  the Bella 6-Quart 10 in 1 Multi Cooker;

      b.  the Bella 10-Quart Digital Multi Cooker;

      c.  the Bella 2-Quart Multicooker;

      d.  the Bella 6-Quart 10 in 1 Programmable Multi Cooker, Stainless Steel;

      e.  the Bella 8-Quart 10 in 1 Programmable Multi Cooker, Stainless Steel;

      f.  the Bella Pro Series 8-Quart 10 in 1 Programmable Multi Cooker;

      g.  the Bella Pro Series 6-Quart 10 in 1 Programmable Multi Cooker;

      h.  the Bella 5-Quart Pressure Cooker; and,

      i.  the Bella 8-Quart 10 in 1 Multi Cooker (collectively referred to as the "Sensio Pressure Cookers" or "Products".)

5.     The Defect is substantially certain to manifest during the reasonable expected life of the Product.

6.     Sensio has been aware of this dangerous Defect since at least the year 2018, if not earlier, but fraudulently concealed it, failed to disclose it, and continued to sell Products that had this defective lid-locking assembly.

7.     By selling a dangerously defective Product, as further detailed in this Complaint, Sensio violated the common law of warranty and unjust enrichment, the Magnuson-Moss Warranty Act, and New York consumer protection statutes.

## PARTIES

8.      Plaintiff Cristen Gardner resides in Vero Beach, Florida and is a citizen of Florida. Plaintiff Cristen Gardner also owns a home in Interlaken, Seneca County, New York.

9.      Defendant Sensio Inc. is a Delaware corporation with its principal place of business in New York, New York.  Sensio's principal place of business is 261 Madison Avenue, 25th Floor New York, New York County, New York 10016.  Sensio may be served with a summons and complaint through its registered agent in the state of New York, CT Corporation System, 28 Liberty Street, New York, NY 10005, or by any other method allowed by law.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5 million, exclusive of interest and costs.  There are thousands of putative class members, at least some of whom have a different citizenship from Defendant.

11.      This Court has jurisdiction over the Defendant because it maintains its principal place of business in this State.  Through its extensive business operations in this State, Defendant has purposefully availed itself of the benefits and protections of this State rendering the exercise of jurisdiction by this Court just and proper.

12.      Venue is proper in this forum pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District and Sensio maintains its principal place of business in this District.

## SENSIO INC.

13.    Sensio Inc. was founded in 2003 by Shae Hong, the current Chief Executive Officer ("CEO"), and his then-business partner, Dany Lavy.

14.    Led by its CEO and now majority owner (Shae Hong), Sensio has emerged as a major designer, distributor, and manufacturer of small kitchen appliances sold in major retailers.

15.    Sensio's business consists primarily of the development, manufacture, distribution, sale, and promotion of branded and non-branded small kitchen appliances in retail and commercial distribution channels, with other products such as home products, cookware, table-top kitchen appliances, cutlery and cutting boards, diffusers, oils, air purifiers and sound machines, as emerging businesses for the company.

16.    Sensio distributes its products under various brand names, including certain private labels, such as "Bella®", and primarily sells its products through various well-known retailers, department stores, big box stores, and online.

17.    In 2011, Sensio launched the Bella® brand of consumer products, which now includes a line of electric pressure cookers, including the Bella® 8-Quart Electric Pressure Cooker.

18.    Since July 27, 2020, Sensio Inc. has conducted business under the registered Trademark, "Made By Gather™".

19.    Defendant Sensio, Inc., d/b/a Made by Gather™, has over 100 employees across New York City, Montreal, Hong Kong, and China.

## STANDARDS FOR PRESSURE COOKER SAFETY
## & THE SENSIO PRESURE COOKERS

20.    The design and performance of the Sensio Pressure Cookers is subject to certain industry standards, including but not limited to UL (f/k/a Underwriter's Laboratories) Standard

136 (8th Edition), Standard for Pressure Cookers, American Society for Testing and Materials ("ASTM"), ASTM F1217 - 17, Standard Specification for Cooker, Steam; and American National Standards Institute ("ANSI").

21.     UL is an industry supported business, that among other things, provides testing and engineering services to manufacturers.  Its testing and certification services assist its customers to meet regulatory requirements and consumer demand for safe, trustworthy products.

22.     Most retailers in the United States require that the electrical appliance products they sell be UL Certified or have the equivalent of a UL Certification.

23.     The applicable industry standard for safety of pressure cookers is found in UL 136 Standard for Safety, Pressure Cookers.

24.     The American National Standard Institute ("ANSI") oversees standards and conformity assessment activities in the United States.

25.     ANSI's mission is to enhance both the global competitiveness of U.S. businesses and the U.S. quality of life by (1) promoting and facilitating voluntary consensus standards and conformity assessment systems and (2) safeguarding their integrity.

26.     ANSI has approved UL 136 Standard for Safety, Pressure Cookers as ASNI/UL 136-2010.

27.     UL 136 Standard for Safety, Pressure Cookers, provides, in part:

4.3     The cover shall be constructed to comply with one of the following:

a) When the cover is opened the maximum normal operating pressure shall be released before the fastening means is fully disengaged;

b) The cover shall be removable only after the pressure within the cooker is zero (0) psig; or

     c)   The opening of the cover when the cooker is under pressure shall not result in hazardous displacement of the cover or the displacement of steam or water.

28.    UL 136 Standard for Safety, Pressure Cookers, also provides, in part:

    9.1   An ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons.  The propelling of a loosened cover and the escape of steam or hot water are examples of this risk.

29.    UL 136 Standard for Safety, Pressure Cookers, requires, in part, that when a pressure cooker vessel is under pressure the cover (or lid) should not be able to be opened by applying a force of 100 pounds (445 N), with the force to be applied gradually.

30.    Pursuant to applicable industry standards, a pressure cooker sold for consumer use should not be designed or constructed in such a way that the lid can be opened by the consumer when the contents of the pot are still under pressure, without the use of a force in excess of 100 pounds.

31.    Industry standards for safety of pressure cookers require that the Bella® 8-Quart Electric Pressure Cooker and all Sensio Pressure Cookers comply with ASNI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

32.    The Bella® 8-Quart Electric Pressure Cooker was not certified to comply with UL 136 Standard for Safety, Pressure Cookers.

33.    Upon information and belief, no Sensio Pressure Cooker was certified to comply with UL 136 Standard for Safety, Pressure Cookers.

34.    Defendant Sensio did not require that its Bella® 8-Quart Electric Pressure Cooker comply with UL 136 Standard for Safety, Pressure Cookers.

35.     Upon information and belief, Sensio did not require that any of the Sensio Pressure Cookers comply with UL 136 Standard for Safety, Pressure Cookers.

36.     Defendant Sensio did not submit its Bella® 8-Quart Electric Pressure Cooker to Underwriters Laboratories for certification pursuant to UL 136 Standard for Safety, Pressure Cookers.

37.     Upon information and belief, Sensio did not submit any of its Sensio Pressure Cookers to Underwriters Laboratories for certification pursuant to UL 136 Standard for Safety, Pressure Cookers.

38.     Prior to the sale of the Bella® 8-Quart Electric Pressure Cooker Defendant, Sensio knew or should have known that its Bella® 8-Quart Electric Pressure Cookers did not comply with ASNI/UL 136-2010, i.e., UL 136 Standard for Safety, Pressure Cookers.

39.     It is the standard in the industry and the duty of any entity importing products or having products made for it by a third party to do quality assurance inspection and testing to ensure that the products that are being provided to it conform with the design and quality specifications of the entity for whom the products were made.

40.     The purpose of quality assurance inspection and testing prior to accepting delivery of any products delivered from a third party is to ensure that the products that are being provided conform with the design and quality specifications of the entity for whom the product was made.

41.     Defendant Sensio had a duty to ensure adequate quality assurance inspection and testing were completed prior to selling the Sensio Pressure Cookers.

42.     Plaintiff is informed and believes that Defendant Sensio did not do adequate quality assurance inspection and testing prior to selling the Sensio Pressure Cookers.

**PLAINTIFF'S BELLA® 8-QUART ELECTRIC PRESSURE COOKER**

43.     Plaintiff has a home in Interlaken, Seneca County, New York, and at all times relevant hereto was and is the owner of a Bella® 8-Quart Electric Pressure Cooker that she kept at that home.

44.     Plaintiff purchased her Bella® 8-Quart Electric Pressure Cooker new in approximately the summer of 2018, from a retailer in the state of New York.

45.     Plaintiff's Bella® 8-Quart Electric Pressure Cooker, which is the subject of this civil action, is a Model No. M-80B23G, with a date code of 1810.  [*See* Figure 1.]



Figure 1

**SENSIO & THE SENSIO PRESSURE COOKERS**

46.     Defendant Sensio designed the Sensio Pressure Cookers.

47.     Defendant Sensio manufactured, marketed, and distributed the Sensio Pressure Cookers or had them manufactured, marketed, and distributed under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court.

48.     Defendant Sensio caused the Sensio Pressure Cookers to be labeled with the brand name "Bella®", a name that is a registered trademark of Sensio.

49.     Upon information and belief, Defendant Sensio imported to the United States the Bella® 8-Quart Electric Pressure Cooker that is the subject of this civil action, or had it imported to the United States for it under a contract or supply agreement with a third party that is not subject to the jurisdiction of this court and that had no role in the design or manufacture of the product.

50.     Defendant Sensio sold the Sensio Pressure Cookers or had them sold under a contract or supply agreement with a third party that had no role in the design or manufacture of the product.

51.     Upon information and belief, prior to the sale of the Sensio Pressure Cookers, Defendant Sensio knew that their lids could be opened while the cooker's contents were under pressure.

52.     Sensio Pressure Cookers did not and do not comply with the requirements of UL 136 Standard for Safety, Pressure Cookers.

53.     Prior to the sale of the Sensio Pressure Cookers, Defendant Sensio knew or should have known that they did not comply with UL 136 Standard for Safety, Pressure Cookers.

54.     Prior to the sale of the Sensio Pressure Cookers, Defendant Sensio knew that the Products' lids did not comply with industry standards for the safety of pressure cookers.

55.     Upon information and belief, at all relevant times, Defendant Sensio tested and/or inspected the Sensio Pressure Cookers for defects and hazards to consumer safety.

56.     Upon information and belief, prior to commencing the sale of Sensio Pressure Cookers, Defendant Sensio knew or should have known that users of these Products could be seriously injured by the Product's lid opening while the cooker's contents were under pressure.

57.     Prior to commencing the sale of Sensio Pressure Cookers, Defendant Sensio did not stop the distribution or sale of the Sensio Pressure Cookers.

58.     Prior to commencing the sale of Sensio Pressure Cookers, Defendant Sensio knew or should have known that the lid of the Sensio Pressure Cookers, including the Bella® 8-Quart Electric Pressure Cooker, did not comply with the requirements of UL 136.

59.     Prior to commencing the sale of Sensio Pressure Cookers, Defendant Sensio knew or should have known that the lid of the Sensio Pressure Cookers, including the Bella® 8-Quart Electric Pressure Cooker, did not comply with industry standards for the safety of pressure cookers.

60.     Prior to commencing the sale of Sensio Pressure Cookers, Defendant Sensio knew or should have known that users of this product, the Sensio Pressure Cookers, including the Bella® 8-Quart Electric Pressure Cooker, had been seriously injured by the lid of the Bella® 8-Quart Electric Pressure Cooker opening while the cooker's contents were under pressure.

61.     Prior to July 27, 2019, Defendant Sensio did not warn consumers that the lid of the Sensio Pressure Cookers, including the Bella® 8-Quart Electric Pressure Cooker, may open while the cooker's contents were under pressure.

62.     Prior to July 27, 2019, Defendant Sensio did not recall the Bella® 8-Quart Electric Pressure Cooker although it knew that the lid may open while the cooker's contents were under pressure.

63.     Prior to July 27, 2019, Defendant Sensio did not recall the Sensio Pressure Cookers even though it knew that the lid may open while the cooker's contents were under pressure.

64.     Prior to the manufacture of the Bella® 8-Quart Electric Pressure Cooker, safer alternative designs for the lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Sensio's competitors.

65.     Prior to the manufacture of the Sensio Pressure Cookers, safer alternative designs for the lid locking system and safety features were feasible, and in fact existed in the pressure cooker products of Sensio's competitors.

66.     Prior to the manufacture of the Bella® 8-Quart Electric Pressure Cooker, Sensio chose not to incorporate into the design and manufacture of its Bella® 8-Quart Electric Pressure Cooker available safer alternative designs for the lid locking system and safety features.

67.     Prior to the manufacture of the Sensio Pressure Cookers, Sensio chose not to incorporate into the design and manufacture of its Bella® 8-Quart Electric Pressure Cooker available safer alternative designs for the lid locking system and safety features.

68.     Upon information and belief, at all relevant times, Sensio represented or caused the following representations to be made about Sensio Pressure Cookers:

> a.    The pressure cookers feature a "[s]afety locking lid [that] unlocks only once pressure is released."[1]
>
> b.    "The lid automatically locks in place and only opens when pressure is released using the valve" and the "[a]uto-locking lid opens only when the pressure is released."[2]

---

[1]   https://bellahousewares.com/products-bella/6qt-pressure-cooker-touch-pad/
(last accessed November 2, 2020).

[2]   https://www.walmart.com/ip/Bella-8-Qt-Pressure-Cooker/698642502 (last accessed February 3, 2022).

    c.  "Safe operation is achieved via the auto-locking lid, pressure release system and safety valve of this stainless BELLA Pro multicooker."[3]

    d.  The "[p]ressure release valve, floating valve and auto-locking lid make the multi-cooker safe to use," and the cooker includes a "Safety Locking Lid."[4]

    e.  The "[a]uto-locking lid opens only when the pressure is released," and the cooker includes other "safety features."[5] (Collectively, the "Misrepresentations".)

    69.    By 2018, Sensio was receiving notice from users of the Defect and continued to receive notice that the lids of the Products were opening while their contents were under pressure, the super-heated contents of the Product erupted from the pot and caused serious burn injuries to the user of the Product.

    70.    On December 19, 2018, a customer complained on Amazon's website stating, "Be careful of this product.  I bought this as a gift for my son and new daughter in law.  Even though I bought it in July they just got the opportunity to try it out.  My son face timed me so I could see it because something wasn't right.  It was spewing out a lot of steam and the valve had never risen.  Also the timer said 30 minutes and never counted down.  After an hour of cooking and steam pouring out he turned it off.  He lifted the pressure valve with a fork and a small amount of pressure released.  He then opened the lid and the contents exploded from the pot severely burning his hand

---

[3]  https://www.bestbuy.com/site/bella-pro-series-8-qt-digital-multi-cooker-stainless-steel/6261444.p?skuId= 6261444 (last accessed February 3, 2022).

[4]  https://www.lowes.com/pd/BELLA-8-Quart-Programmable-Electric-Pressure-Cooker/1000604247 (last accessed February 3, 2022).

[5]  https://www.bjs.com/product/bella-8-qt-pressure-cooker/3000000000000583086 (last accessed February 3, 2022).

and covering everything in the kitchen.  The product is defective.  I have a Cosori and love it.  I use it every day.  Nothing like that ever happened. I would never buy this product again."[6]

71.     Upon information and belied, Sensio actively searches for and reviews (or Sensio causes another party to search for and review) all customer complaints posted on online retailers' websites. *See, e.g.*,   https://www.bestbuy.com/site/reviews/bella-pro-series-8-qt-digital-multi-cooker-stainless-steel/6261444?searchText=blew&sort=BEST_MATCH   (In   response   to   a negative, one-star review, Sensio writes, "Hello, Thank you for voicing your concerns. We appreciate you taking the time to provide your feedback.  We are always here to help.  You can reach us at 1 866-832.4843 or email us at help@bellahousewares.com.  Have a great day.  The BELLA team.").

72.     Defendant Sensio received continued notice of the Defect when Sensio was sued at least three times in federal court with allegations that the Sensio Pressure Cookers were defective and that the Defect allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker:

        a.   On or about August 5, 2020, Chandra and Karey Ashley sued Sensio alleging that the Sensio Pressure Cookers were defective and that the Defect allowed users to open the pressure cookers' lid with only limited effort, prior to complete depressurization resulting in severe burns. *See Ashley v. Bella* Complaint, attached as Exhibit A.

---

[6]   https://www.amazon.com/BELLA-14719-Pressure-Multifunction-One-Touch/product-reviews /B07HRQ6V3B/ref=cm_cr_arp_d_viewopt_kywd?ie=UTF8&reviewerType=allreviews&page Number=1&filterByKeyword=explode (last accessed February 3, 2022).

b.  On November 10, 2020, Amy Kelly sued Sensio alleging that the Sensio Pressure Cookers were defective and that the Defect allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.  *See* Case No. 20-cv-07918, DE 1.

c.  On May 20, 2021, Lisa Doyle sued Sensio alleging that the Sensio Pressure Cookers were defective and that the Defect allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.  *See* Case No. 21-cv-00664, DE 1.

d.  On October 11, 2021, Jennifer Trujillo sued Sensio alleging that the Sensio Pressure Cookers were defective and that the Defect allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.  *See* Case No. 21-cv-01720, DE 1.

73.  Had Plaintiff and Class Members known that the Products are defective, Plaintiff and Class Members would not have purchased the Products, would not have purchased the Products at the prices that they paid, or would have returned the Products.

74.  Had Plaintiff and Class Members known the falsity of the Misrepresentations, Plaintiff and Class Members would not have purchased the Products, would not have purchased the Products at the prices that they paid, or would have returned the Products.

**THE JULY 27, 2019 INCIDENT**

75.  On or about July 27, 2019, the Injured Victims were using a Bella® 8-Quart Electric Pressure Cooker as intended in a normal fashion at a property owned by Plaintiff in Interlaken,

Seneca County, New York when the lid of the Bella® pressure cooker opened while the cooker's contents were still under pressure.

76.     On or about July 27, 2019, when the Injured Victims were using the subject Bella® 8-Quart Electric Pressure Cooker, the cover was opened, and the maximum normal operating pressure was not released before the fastening means was fully disengaged.

77.     On or about July 27, 2019, while the Injured Victims were using the subject Bella® 8-Quart Electric Pressure Cooker, the cover was removable before the pressure within the cooker was zero (0) psig.

78.     On or about July 27, 2019, while the Injured Victims were using the subject Bella® 8-Quart Electric Pressure Cooker, the opening of the cover resulted in the hazardous displacement of the cover and steam.

79.     At all relevant times, an ordinary user of a Sensio Pressure Cooker was capable of manually defeating the holding action of the clamping device even when the Cooker's pressure had reached a value that created a risk of injury to persons.

80.     On or about July 27, 2019, due to a defect in its design, manufacture and/or warnings, the lid of the Bella® 8-Quart Electric Pressure Cooker opened while the cooker's contents were under pressure.

81.     On or about July 27, 2019, as the lid of the Bella® 8-Quart Electric Pressure Cooker opened, its super-heated contents and steam erupted from the pressure cooker, resulting in severe burns to Ross A. Gardner's chest, abdomen, and both arms.  [*See* Figures 2 and 3, below.]




Figure 2                    Figure 3

82.    On or about July 27, 2019, as the lid of the Bella® 8-Quart Electric Pressure Cooker

opened, its super-heated contents and steam erupted from the pressure cooker, resulting in severe

burns to Stephanie Reader.  [*See* Figures 4 and 5, below.]




Figure 4                         Figure 5

**CLASS ALLEGATIONS**

83.    Plaintiff brings this action against Defendant individually and as a class action

pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of:

All persons in the United States who purchased a Sensio Pressure Cooker after March 1, 2016 (the "Nationwide Class").  The class includes purchasers of the following Sensio Pressure Cooker products:

    a)  the Bella 6-Quart 10 in 1 Multi Cooker;
    b)  the Bella 10-Quart Digital Multi Cooker;
    c)  the Bella 2-Quart Multicooker;
    d)  the Bella 6-Quart 10 in 1 Programmable Multi Cooker, Stainless Steel;
    e)  the Bella 8-Quart 10 in 1 Programmable Multi Cooker, Stainless Steel;
    f)  the Bella Pro Series 8-Quart 10 in 1 Programmable Multi Cooker;
    g)  the Bella Pro Series 6-Quart 10 in 1 Programmable Multi Cooker;
    h)  the Bella 5-Quart Pressure Cooker; and
    i)  the Bella 8-Quart 10 in 1 Multi Cooker.

84.    Plaintiff further brings this action on behalf of:

All persons who reside in the State of New York and who purchased a Sensio Pressure Cooker after March 1, 2016 (the "New York Subclass").

85.    The Nationwide Class and New York Subclass are collectively referred to here as the "Class" or "Classes."

86.    Excluded from the Classes are Defendant; any parent, affiliate, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; Defendant's officers or directors; or any successor or assigns of Defendant.  Also excluded are any Judge or court personnel assigned to this case and members of their immediate families.

87.    **Numerosity**: The members of each Class are so numerous that joinder of all members is impracticable.  While the exact number of Class Members is presently unknown, each Class consists of thousands of people.  The exact number of Class Members can be determined by Defendant's sales information and other records.

88.    **Commonality**: Common questions of law and fact exist as to all members of each Class, including, without limitation:

a.  Whether the Sensio Pressure Cookers designed and sold by Defendant possess a material defect;

b.  Whether the Defect creates an unreasonable risk that the lid of the Sensio Pressure Cookers may be opened by the user/consumer applying less than 100 pounds of rotational force, applied gradually, while its contents are under pressure, resulting in its super-heated contents erupting from the pot and causing serious injuries by scalding the user/consumer, and others nearby;

c.  Whether the Defect creates an unreasonable risk that the lid of the Sensio Pressure Cookers may open spontaneously while its contents are under pressure, resulting in its super-heated contents erupting from the pot and causing serious injuries by scalding the use/consumer, and others nearby;

d.  Whether Defendant knew or should have known that the Sensio Pressure Cookers possessed the Defect at the time of sale;

e.  Whether Defendant omitted to disclose the Defect;

f.  Whether Defendant concealed the Defect, once it knew of the defect;

g.  Whether Defendant breached express warranties relating to the Sensio Pressure Cookers;

h.  Whether Defendant breached implied warranties of merchantability relating to the Sensio Pressure Cookers;

i.  Whether Defendant violated the Magnusson-Moss Warranty Act;

j.   Whether Defendant breached consumer protection statutes of the State of New York;

k.  Whether Plaintiff and Class Members are entitled to damages;

l.  Whether Plaintiff and Class Members are entitled to replacement or repair of their defective Sensio Pressure Cookers;

m. Whether Plaintiff and Class Members are entitled to restitution of the purchase price they paid for their defective Sensio Pressure Cookers; and,

n. Whether Plaintiff and Class Members are entitled to other equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

89.     **Typicality**: Plaintiff has the same interest in this matter as all Class Members, and Plaintiff's claims arise out of the same set of facts and conduct by Defendant as the claims of all Class Members.  Plaintiff's and Class Members' claims all arise out of Defendant's sale of the defective Sensio Pressure Cookers that have created a significant safety risk to consumers, and from Defendant's failure to disclose the Defect.

90.     **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained competent counsel experienced in consumer and product liability class action litigation.  Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class Members.

91.     **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met.  Defendant is continuing to commit the unlawful practices alleged here, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect.  Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate for the Class as a whole.

92.     **Predominance**: The elements of Rule 23(b)(3) are met.  The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy.  The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Serial adjudication in numerous venues is not efficient, timely, or proper.  Judicial resources will be unnecessarily depleted by resolution of individual claims.  Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible.  Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs.

93.     **Superiority.** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to an individual Plaintiff may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable.  Individual litigation by each Class member would also strain the court system.  Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

94.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues are set forth in Paragraph 87(a)–(n) above.

95.     Finally, all members of the proposed Classes are readily ascertainable.  Defendant and retailers of the Products have access to information regarding the individuals who purchased the defective Products.  Using this information, Class members can be identified, and their contact information ascertained for the purpose of providing notice to the Class.

## TOLLING OF THE STATUTES OF LIMITATIONS

96.     Defendant knew or reasonably should have known that the Product was defective before its sale.  Defendant intentionally concealed material truths and disclosed half-truths while at the same time concealing material information that would have corrected consumers' perceptions concerning the Product from the general public and Class Members, while continuing to falsely represent that the Product is safe and fit for its intended use.

97.     Defendant affirmatively represented to the general public, among other things, that the Product was safe, and that the lid would not come off when the contents were under pressure. Through these representations, Defendant created a reasonable expectation among ordinary consumers that the product was safe to use for its intended purpose.

98.     Based upon Defendant's misrepresentations and concealment, Defendant is equitably estopped from asserting a statute-of-limitations defense.

99.     Plaintiff and the Class Members could not have reasonably discovered the Defect until shortly before the filing of this Complaint.  As a result of Defendant's active and continuing

concealment of the Defect and/or failure to inform Plaintiff and the Class of the Defect, any and all statutes of limitations otherwise applicable to the allegations here have been tolled.

100.     In fact, prior to the purchase of the Sensio Pressure Cookers, Plaintiff and Class Members had neither knowledge nor notice that there was any defect in the design, manufacture or labeling of the Sensio Pressure Cookers.

101.     The claims alleged here accrued upon the discovery of the Defect.  Because the Defect is hidden and Defendant failed to disclose the true character, nature, and quality of the Sensio Pressure Cookers, Plaintiff and Class Members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation.  Thus, any applicable statutes of limitations have been tolled by Defendant's knowledge, misrepresentation, and/or concealment and denial of the facts as alleged here.

## FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
**(On behalf of Plaintiff & the Nationwide Class, or alternatively, the New York Subclass)**

102.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

103.     In connection with its sale of the Sensio Pressure Cookers, Defendant expressly provided a Two (2) Year Limited Warranty ("Warranty") that the Product will be free from mechanical defects in material and workmanship.  Plaintiff is informed and believes that each Sensio Pressure Cooker has an identical or substantially identical Warranty.  *See* Warranty at 13. (A copy of a Sensio Pressure Cooker Warranty is attached as Exhibit B to this Complaint.)

104.     The Warranty provides, in part, as follows:

SENSIO Inc. hereby warrants that for a period of TWO YEARS from the date of purchase, this product will be free from mechanical defects in material and

workmanship, and for 90 days in respect to non-mechanical parts.  At its sole discretion, SENSIO Inc. will either repair or replace the product found to be defective, or issue a refund on the product during the warranty period.

105.    The Sensio Pressure Cooker is defectively designed as a whole unit and is covered by Defendant's Warranty.

106.    The Sensio Pressure Cooker's lid-locking mechanism is defectively designed and is covered by Defendant's Warranty.

107.    Plaintiff and the Class have privity of contract with Defendant as original retail purchasers of Sensio Pressure Cookers as stated in the written Warranty.

108.    The express written Warranty covering the Sensio Pressure Cookers was a material part of the bargain between Defendant and consumers.  At the time it made this express Warranty, Defendant knew of the purpose for which the Sensio Pressure Cooker was to be used and designed and intended it to be used for that specific purpose.

109.    Defendant breached its express Warranty by selling Sensio Pressure Cookers that were not free of defects, not made for two years of safe and dependable operation, not made from merchantable material and workmanship, and could not be used for the ordinary purpose of preparing meals at home.  Defendant breached its express written Warranty to Plaintiff and Class Members in that the Sensio Pressure Cookers are defective when made, and thus contain the Defect on the very first day of purchase, creating a serious safety risk to Plaintiff and Class Members.

110.    The Sensio Pressure Cookers that Plaintiff and Class Members purchased were subject to the Defect and caused each of them injury because they would not have purchased the Product had they known of the Defect.

111.    Defendant expressly warranted in writing that it would repair, replace, or issue a refund on any defective Product.

112.    Defendant breached the Warranty to repair or replace the defective Sensio Pressure Cooker when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Sensio Pressure Cooker.

113.    Plaintiff is informed and believes that Defendant received notice and has known of the Defect since at least 2018 through customer warranty claims reporting problems with the Sensio Pressure Cooker, customer complaints, and its own internal and external testing.

114.    Despite having notice and knowledge of the Defect, Defendant failed to provide a Sensio Pressure Cooker free of the Defect to Plaintiff and each Class Member, failed to provide free repairs of the defective Sensio Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

115.    As a result of Defendant's breach of its express written Warranty, Plaintiff and Class Members have suffered damages.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability
**(On behalf of Plaintiff & the Nationwide Class, or alternatively, the New York Subclass)**

116.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

117.    The Sensio Pressure Cookers purchased by Plaintiff and Class Members were defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the general public.

118.    All of the Sensio Pressure Cookers sold by Defendant left Defendant's facilities and control with the Defect that was caused by a defective design incorporated into the manufacture of the Sensio Pressure Cooker.

119.    The Defect places Plaintiff and Class Members at a serious safety and property damage risk upon using the Sensio Pressure Cooker in their homes.

120.    The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis of the bargain between Defendant and purchasers, including Plaintiff and the Class Members.

121.    Defendant breached the implied warranty of merchantability because the Sensio Pressure Cooker is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.  This risk is substantially certain to manifest during the reasonable expected life of the Product.

122.    Defendant knew, or should have known, that the Sensio Pressure Cooker posed a safety risk and was defective, and that it breached the implied warranties at the time it sold the Sensio Pressure Cooker to Plaintiff and Class Members or otherwise placed them into the stream of commerce.

123.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members bought the Sensio Pressure Cooker without knowledge of the Defect or the serious safety risk.

124.   As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members purchased unsafe and defective Sensio Pressure Cookers that were not fit to be used for their intended purpose of preparing food in a residential setting.

125.   As alleged in detail above, Defendant received notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Sensio Pressure Cooker, customer complaints, and its own testing.

126.   Despite having notice and knowledge of the Defect, Defendant failed to provide a Defect-free Sensio Pressure Cooker to Plaintiff and Class Members, failed to provide free repairs of the defective Sensio Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

127.   Any attempt by Defendant to disclaim the implied warranty was improper, insufficient, and of no effect.

128.   As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members have suffered damages.

### THIRD CLAIM FOR RELIEF
**Violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On behalf of Plaintiff & the Nationwide Class, or alternatively, the New York Subclass)**

129.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

130.   Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. sections 2301 *et seq*. in response to widespread consumer complaints regarding misleading and deceptive warranties.  The Act imposes civil liability on any "warrant" for failing to comply with any obligation under written and implied warranties.  15 U.S.C. § 2310(d)(1).

131.    The Product is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1).

132.    Plaintiff and the Class Members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

133.    Defendant is a "supplier" as that term is defined by 15 U.S.C. § 2301(4).

134.    Defendant is a "warrantor" as that term is defined by 15 U.S.C. § 2301(5).

135.    Defendant has failed to remedy the Defect, despite its knowledge and notice of the Defect in the Sensio Pressure Cooker.

136.    Defendant expressly warranted the Product would be free of defects.

137.    At the time Defendant issued written Warranties for the Sensio Pressure Cooker, it knew that the Product had the propensity to prematurely fail and posed an unreasonable safety hazard because of the Defect.   Defendant's continued misrepresentations and omissions concerning the Defect, as well as Defendant's failure to abide by its own written and implied warranties, are "unfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce."   Accordingly, Defendant's behavior is unlawful under 15 U.S.C. § 2310(b).

138.    Defendant provided Plaintiff and Class Members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

139.    A consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state.   15 U.S.C. § 2310(d)(1).

140.    When Plaintiff and the Class Members purchased the Products, Defendant expressly warranted that it would cover repairs arising out of mechanical defects in materials and workmanship without cost to the consumer for two years after purchase.

141.    Plaintiff and Class Members used the Products in a manner consistent with their intended and normal use and performed each and every duty required under the terms of the Warranty.

142.    Plaintiff and the Class Members seek to recover damages caused as a direct result of Defendant's breach of its written and implied warranties and its unlawful conduct.  Damages include the purchase price and/or costs associated with repairing or replacing the Products with non-defective products.

143.    Suppliers who offer a written warranty on a consumer product are prohibited from disclaiming or modifying implied warranties.  15 U.S.C. § 2308(a).  The duration of an implied warranty may only be restricted to the duration of a limited written warranty of reasonable duration.  15 U.S.C. § 2308(b).  Defendant's Warranty provides a warranty period of two-years[7], so, under the Magnuson-Moss Warranty Act, Defendant cannot disclaim implied warranties with respect to Product failures that occurred within the two-year period offered in Defendant's Warranty.

144.    Defendant's attempt to disclaim implied warranties for failures caused by the Defect that occurred within the duration of the Warranty is null and void as a violation of the Magnuson Moss Warranty Act.

145.    All jurisdictional prerequisites have been satisfied.

---

[7] and 90 days for "non-mechanical" parts,

146.     Under 15 U.S.C. § 2310, on her own behalf and on behalf of the Class, Plaintiff sent notice of violations of the Magnuson-Moss Warranty Act (attached as Exhibit C) to Defendant on March 17, 2022.

147.     Plaintiff's Magnuson-Moss Warranty Act notice was sent via certified mail, return receipt requested, to Defendant's principal place of business, advising Defendant that it is in violation of the Magnuson-Moss Warranty Act and that Plaintiff is acting on behalf of a class, and affording Defendant a reasonable opportunity to cure its failure to comply.

148.     Plaintiff was injured by Defendant's Magnuson-Moss Warranty Act violations. Accordingly, Plaintiff and the Class Members suffered damages caused by Defendant's breach of express and implied warranties and are entitled to recover damages, including, but not limited to, restitution, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. section 2310.

**FOURTH CLAIM FOR RELIEF**
**Fraud By Omission**
**(On behalf of Plaintiff & the Nationwide Class, or alternatively, the New York Subclass)**

149.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

150.     Defendant knew that the Product suffered from the Defect, that it was defectively designed and/or manufactured, and was not suitable or safe for its intended use.

151.     Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Product.

152.     Defendant had a duty to Plaintiff and Class Members to disclose the defective nature of the Product because:

a. Defendant was in a superior position to know the true state of facts about the safety Defect contained in the Product;

b. The omitted facts were material because they directly impact the safety of the Product;

c. Defendant knew that the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiff and Class Members;

d. Defendant made partial disclosures about the quality of the Product without revealing the true defective nature; and,

e. Defendant actively concealed the defective nature of the Product from Plaintiff and Class Members.

153. Because the Defect in the Products is latent and unobservable until it arises, Plaintiff and Class Members had no reasonable means of knowing that Defendant's representations concerning the Product were incomplete, false, misleading, or that it had failed to disclose that the Product was defective. Plaintiff and Class Members did not discover, and reasonably could not have discovered, Defendant's deceit before they purchased the Product or before they could have returned their Sensio Pressure Cookers without penalty.

154. Had Plaintiff and Class Members known that the Products are defective, they would not have purchased the Products, would not have purchased the Products at the prices that they paid, or would have returned the Products.

155. Defendant had a duty to disclose the Defect because the Defect results in a material and unreasonable safety hazard and Defendant possessed exclusive knowledge of it.

156.    Defendant had a duty to disclose the Defect because of its knowledge of the Defect and its advertising statements and representations about the Product alleged above.

157.    Plaintiff and Class Members were exposed to Defendant's omission about the Product before and immediately after purchase and within the time period in which they could have returned their Sensio Pressure Cooker without penalty.  None of the informational sources Plaintiff encountered – advertisements, websites, external packaging – disclosed that the Sensio Pressure Cookers are defective.

158.    Defendant failed to disclose the defect in order to sell more of the Products, to obtain a premium price, to prevent damage to its brand, and to avoid the costs of developing a fix for the defect and repairs, replacements, and refunds under its Warranty.

159.    The facts about the Product that Defendant suppressed and omitted were material, and Plaintiff and Class Members were unaware of them when they purchased the Product.  Had Defendant disclosed the Defect, including through advertising and the Product packaging, Plaintiff and Class Members would not have purchased the Product.

160.    When deciding to purchase a Sensio Pressure Cooker, Plaintiff and Class Members reasonably relied to their detriment upon Defendant's material omissions regarding the quality of the Product, the safety of the Product, and the absence of a product defect.

161.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's fraudulent omission.

162.    Defendant's fraudulent omissions were malicious, oppressive, deliberate, intended to defraud Plaintiff and Class Members and enrich Defendant, and in reckless disregard of Plaintiff's and Class Members' rights, interests, and well-being.  Defendant's conduct warrants an

assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

### FIFTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On behalf of Plaintiff & the Nationwide Class, or alternatively, the New York Subclass)**

163.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

164.     As a result of the Defect, Plaintiff and the Class have conferred an unwarranted benefit on Defendant and all revenue collected from the sale of the Products rightfully belong to Class Members and represents an unwarranted benefit conferred upon Defendant by the Class.

165.     Under principles of equity and good conscience, Defendant should not be permitted to retain the benefits it gained through its actions described herein.

166.     Plaintiff and the Class Members have suffered loss as a direct result of Defendant's conduct.

167.     Among other remedies, Plaintiff, on her own behalf and on behalf of the Class Members, seeks the imposition of a constructive trust and restitution of proceeds Defendant received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest.

### SIXTH CLAIM FOR RELIEF
**Deceptive Acts or Practices, New York Gen. Bus. Law § 349**
**(On behalf of Plaintiff & the New York Subclass)**

168.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

169.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making the Misrepresentations.

170.     The foregoing deceptive acts, practices, and Misrepresentations were directed at consumers.

171.     The foregoing deceptive acts, practices, and Misrepresentations are misleading in a material way because they fundamentally misrepresent the substance, quality, characteristics, attributes, and benefits of the Products and induce consumers to purchase them.

172.     Plaintiff and members of the New York Subclass were injured because: (a) they would not have purchased the Products or would not have purchased the Products at the price they paid for them had they known that the Products were not safe as per Defendant's Misrepresentations; (b) they purchased the Products based on Defendant's Misrepresentations; and (c) the Products did not have the characteristics and benefits promised.  As a result, Plaintiff and the New York Subclass have been damaged in the amount of the purchase price of the Products, i.e., the difference in value between the Products as advertised and the Products as actually sold. Because the Products are unsafe, they are totally worthless.

173.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

174.     Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's Misrepresentations equal to the purchase price of the Products.

175.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### False Advertising, New York Gen. Bus. Law § 350
### (On behalf of Plaintiff & the New York Subclass)

176.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 as if fully set forth herein.

177.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law.

178.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are directed to consumers.

179.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are misleading in a material way because they fundamentally misrepresent the substance, quality, characteristics, attributes, and benefits of the Products and induce consumers to purchase them.

180.     Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

34

181.    Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, have resulted in consumer injury or harm to the public interest.

182.    Plaintiff and members of the New York Subclass were injured because: (a) they would not have purchased the Products or would not have purchased the Products at the price they paid for them had they known that the products were not safe per Defendant's Misrepresentations; (b) they purchased the Products based on Defendant's Misrepresentations; and (c) the Products did not have the characteristics and benefits promised.  As a result, Plaintiff and the New York Subclass have been damaged in the amount of the purchase price of the Products, i.e., the difference in value between the Products as advertised and the Products as actually sold.  Because the Products are unsafe, they are totally worthless.

183.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the Misrepresentations, Plaintiff and members of the New York Subclass have suffered and continue to suffer economic injury.

184.    Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendant's Misrepresentations equal to the purchase price of the Products.

185.    On behalf of herself and other members of the Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that this Court:

(a)     Determine that the claims alleged here may be maintained as a class action under Federal Rule of Civil Procedure 23, and enter an Order certifying the Classes defined above and appointing Plaintiff as Class representative;

(b)     Award all actual, general, special, incidental, statutory, punitive, and consequential damages and/or restitution to which Plaintiff and Class Members are entitled;

(c)     Award pre-judgment and post-judgment interest as provided by law;

(d)     Grant appropriate equitable relief, including, without limitation, an Order requiring Defendant to: (1) adequately disclose the defective nature of the Product; and (2) return to Plaintiff and Class Members all costs attributable to remedying or replacing Sensio Pressure Cookers, including but not limited to economic losses from the purchase of replacement Products;

(e)     Award reasonable attorneys' fees and costs as permitted by law; and,

(f)     Grant such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: June 3, 2022                    By:      */s/ Jonathan M. Sedgh*
                                                Jonathan M. Sedgh
                                                New York Bar No. 4557260
                                                jsedgh@forthepeople.com
                                                **MORGAN & MORGAN**
                                                **COMPLEX LITIGATION GROUP**
                                                350 Fifth Avenue, Suite 6705

New York, NY 10118
Telephone: (212) 738-6299

Michael F. Ram*
mram@forthepeople.com
Marie N. Appel*
mappel@forthepeople.com
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913


George E. McLaughlin*
GEM@MCLLF.com
**MCLAUGHLIN LAW FIRM, P.C.**
1890 Gaylord Street
Denver, Colorado 80206-1211
Telephone: (720) 420-9800

*To be admitted *Pro Hac Vice*

*Counsel for Plaintiff and the Proposed
Classes*